## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHRISTOPHER LOUIS CLARK**                              **CIVIL ACTION**

**VERSUS**                                               **NO. 16-15780**

**SHERIFF RANDY SEAL, ET AL.**                           **SECTION: "F"(1)**

## REPORT AND RECOMMENDATION

Plaintiff, Christopher Louis Clark, a state inmate,[1] filed this federal civil rights action pursuant to 42 U.S.C. § 1983.  In his original complaint, he sued Sheriff Randy Seal, Warden Jim Miller, Dr. Jerry Thomas, and Nurse Saltaformaggio.[2]  Because the bases of plaintiff's claims were unclear from the vague complaint, the Court held a Spears hearing on November 28, 2016.[3]  At that Spears hearing, plaintiff testified as follows:

Shortly after his arrest, plaintiff was taken to the emergency room for a problem concerning a preexisting hernia, and a CAT scan revealed that he needed surgery.  After arriving back at the Washington Parish Jail, he was examined by the jail's physician, Dr. Jerry Thomas.  During that examination, Dr. Thomas told plaintiff to "drop trou."  Dr. Thomas then "grabbed" plaintiff's penis and testicles.  At that point, plaintiff objected, stating that he did not have a testicular hernia, whereupon Dr. Thomas left the room.  Plaintiff then dressed and went into the hall, where he heard

---

[1] At the time he filed this lawsuit, plaintiff was a pretrial detainee; however, he has since pleaded guilty and been sentenced.

[2] Rec. Doc. 4.

[3] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998).  The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

Dr. Thomas instruct the nurse to give plaintiff ibuprofen.  Plaintiff was "pretty shook up" by the encounter.  Specifically, he was uncomfortable with the fact that Dr. Thomas had performed the examination with a female nurse present, and he felt that he had been "inappropriately fondled for no reason" by Dr. Thomas.

Plaintiff testified that Sheriff Randy Seal and Warden Jim Miller had no personal involvement in the alleged constitutional violations in this case.  Plaintiff testified that he named Miller as a defendant merely because he is in charge of the jail, and Seal was named only because he reviews the final step of administrative grievances.

Although he originally named Nurse Saltaformaggio as a defendant, plaintiff stated that he now wishes to drop the claim against her, and a declaration to that effect has been filed into the record.[4]  He feels that the nurse went "above and beyond" to assist him.

Prior to the Spears hearing, plaintiff filed an amendment to his complaint entitled "Writ of Habeas Corpus."[5]  In that document, he alleged that his arrest was "unconstitutional" and that he was experiencing problems representing himself in his state criminal case.  Specifically, he noted that he was hampered by the lack of a law library at the jail, and he alleged that he was having problems with the state court accepting his filings.  At the Spears hearing, plaintiff acknowledged that he was being represented in the state criminal proceeding by a public defender, David Knight; however, he alleged that Knight was ineffective.  Plaintiff stated that he had filed no applications with the Louisiana Supreme Court concerning the state criminal prosecution.

After the Spears hearing, plaintiff filed three additional amended complaints.

---

[4] Rec. Doc. 8-1, p. 2.
[5] Rec. Doc. 7.

In the first of those amended complaints, plaintiff added the following additional defendants:   Officer James Cockells, "Eceptionist Med.link," and the Washington Parish Government.  Plaintiff claimed that his arrest by Cockells was unconstitutional.  Plaintiff made no allegations concerning "Eceptionist Med.link," and he indicated that he added the Washington Parish Government as a defendant because it employs Dr. Thomas and is responsible for the building in which the jail is housed.  He also attached grievances he sent to the Washington Parish Government which were returned to him stamped "Return to Sender."  Plaintiff also reiterated the allegations he made against Dr. Thomas at the <u>Spears</u> hearing.  Additionally, plaintiff added new claims against Warden Miller, i.e. that Miller denied plaintiff access to a law library and had not answered his grievances.[6]

In the second of the post-hearing amended complaints, plaintiff added various other allegations.  He noted that his criminal prosecution had now ended, but he claimed that he was forced to plead guilty in his criminal case and was sentenced to five years in jail.  He again complained that the state court refused to hear his motions, and he further claimed that he was being housed in a "dungeon."  He also claimed that he has been denied medications and treatments prescribed by medical professionals from outside the jail and that medications at the jail were distributed by unqualified correctional officers.[7]

In the third amended complaint, plaintiff reiterated that the jail conditions were "horrible," that he was forced to plead guilty, that his counsel had been ineffective, and that the state court ignored his filings in his criminal case.[8]

---

[6] Rec. Doc. 10.
[7] Rec. Doc. 11.
[8] Rec. Doc. 14.

## I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[9]  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)    is frivolous or malicious;
> (ii)   fails to state a claim on which relief may be granted; or
> (iii)  seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact."  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In making a determination as to whether a claim is frivolous,

---

[9] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint, as amended,[10] and fully considering his Spears hearing testimony, the undersigned recommends that, for the following reasons, the complaint be dismissed.

---

[10] The Court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

## **II.  Habeas Corpus Claims**

As a preliminary matter, the Court notes that plaintiff indicated in one of his amendments to his complaint that he wished to seek federal habeas corpus relief.[11]  Further, several of his claims, such as his contentions that he was forced to plead guilty, his counsel was ineffective, and the state court refused to consider his *pro se* filings in his criminal case, are clearly claims that challenge the validity of the state court proceedings which resulted in eventual conviction.  As such, they challenge the very constitutionality of his conviction and therefore are in fact habeas claims.  However, this lawsuit was filed as a federal civil rights action, not a habeas corpus petition.  Moreover, even if plaintiff's civil rights complaint is construed in part as a habeas corpus petition, he is not entitled to relief for the following reasons.

Depending on his status at the time of filing and the nature of his claims, a state inmate may seek habeas corpus relief pursuant to either 28 U.S.C. § 2241 or § 2254.[12]  However, under either statute, he must first exhaust available state court remedies before seeking habeas corpus relief in federal court.  Dickerson v. Louisiana, 816 F.2d 220, 225 (5th Cir. 1987); Johnson v. Louisiana, Civ. Action No. 08-4274, 2009 WL 960564, at *2 n.2 (E.D. La. Apr. 7, 2009); Landor v. Hogue, Civ. Action No. 07-9171, 2008 WL 243950, at *2 n.3 (E.D. La. Jan. 25, 2008); Howard v. Vedros, Civil Action No. 94-0426, 1994 WL 117781 (E.D. La. Mar. 25, 1994).[13]  Generally,

---

[11] Rec. Doc. 7.

[12] Although both § 2241 and § 2254 can serve as a basis for relief for state prisoners, the two sections are not interchangeable.  Rather, each applies in a specific situation.  Specifically, § 2254 applies when a prisoner is challenging the legality of either his underlying state conviction or sentence, whereas § 2241 applies when a prisoner is seeking pre-trial relief or challenging the manner in which prison officials are executing his sentence post-trial.  See Holley v. Texas, No. 98-51222, 1999 WL 767117 (5th Cir. Sept. 3, 1999); Stewart v. Cain, No. 95-30865, 1995 WL 727244 (5th Cir. Nov. 21, 1995); Williams v. Cain, Civ. Action No. 14-1517, 2015 WL 4647947, at *2 (E.D. La. July 27, 2015).

[13] A federal court may raise *sua sponte* the lack of exhaustion.  Magouirk v. Phillips, 144 F.3d 348, 357 (5th Cir. 1998); see also Tigner v. Cockrell, 264 F.3d 521, 526 n.3 (5th Cir. 2001); Shute v. Texas, 117 F.3d 233, 237 (5th Cir. 1997).

the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner.  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir.1988).  In Louisiana, the highest state court is the Louisiana Supreme Court.  See La. Const. art. V, § 5(A).  At the Spears hearing, plaintiff stated under oath that he had filed no applications with the Louisiana Supreme Court concerning his state criminal prosecution.  Accordingly, he has not met the exhaustion requirement, and his federal habeas corpus claims should therefore be dismissed.[14]

Further, for the following reasons, the Court also finds that plaintiff's 42 U.S.C. § 1983 claims should also be dismissed.

### III.  Federal Civil Rights Claims

### A.  Nurse Saltaformaggio

As noted, plaintiff stated in the Spears hearing that he wished to drop his claims against Nurse Saltaformaggio, and a declaration to that effect has been filed into the record.[15]  It is clear that plaintiff is entitled to voluntarily dismiss his claims against Saltaformaggio.  Subject to exceptions not applicable in this case, the Federal Rules of Civil Procedure provide that "the plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment ...."  When a *pro se* plaintiff seeks dismissal in a situation in which Rule 41(a)(1)(A)(i) would be applicable, the fact that he fails to cite that rule or correctly style the notice of dismissal is of no significance.  See Carter v. United States, 547 F.2d 258, 259 n.2 (5th Cir. 1977).

---

[14] Of course, plaintiff is not precluded from filing a timely application for federal habeas corpus relief in the future once he has exhausted his state court remedies.

[15] Rec. Doc. 8-1, p. 2.

The United States Fifth Circuit Court of Appeals has noted that Rule 41(a)(1)(A)(i) "means what it says" and, therefore, "a plaintiff has an *absolute right* to dismiss a lawsuit before the defendant has filed an answer or summary judgment motion." Id. at 259 (emphasis added). When a plaintiff has filed a proper notice of dismissal, a court has "no power or discretion to deny [plaintiff's] right to dismiss or to attach any condition or burden on that right." Williams v. Ezell, 531 F.2d 1261, 1264 (5th Cir. 1976).

In this lawsuit, the defendants have filed no answers or motions for summary judgment. Therefore, pursuant to Rule 41(a)(1)(A)(i), plaintiff is entitled to voluntarily dismiss his claims against Nurse Saltaformaggio. See, e.g., Estes v. Varnedo, Civ. Action No. 13-723, 2013 WL 2459492 (E.D. La. May 30, 2013); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *2 (E.D. La. Aug. 25, 2009).

## B.  Inappropriate Sexual Behavior

Plaintiff complains that his penis and testicles were "grabbed" by Dr. Thomas during a hernia examination. Plaintiff found this objectionable in light of the fact that he did not have a testicular hernia. He also complains that Dr. Thomas inappropriately allowed a female nurse, Nurse Saltaformaggio, to witness the genital examination and that she failed to report the doctor's actions.[16]

As an initial matter, a physician's examination of the genitals of a patient complaining of a hernia does not strike the undersigned as facially inappropriate or untoward. See Roten v. McDonald, 394 Fed. App'x 836 (3rd Cir. 2010). Nevertheless, even if the Court were to accept

---

[16] As noted, plaintiff has since absolved Nurse Saltaformaggio of any wrongdoing, praised her efforts to assist him, and voluntarily dismissed his claims against her.

plaintiff's characterization of the action as inappropriate sexual behavior, his claim still would not

be cognizable.  On the contrary, as the United States Fifth Circuit Court of Appeals has noted:

> While violent sexual assaults involving more than *de minimis* force are actionable
> under the Eighth Amendment, see Schwenk [v. Hartford, 204 F.3d 1187, 1195 &
> 1197 (9th Cir. 2000)], isolated, unwanted touchings by prison employees, though
> "despicable and, if true, they may potentially be the basis of state tort actions ...
> they do not involve a harm of federal constitutional proportions as defined by the
> Supreme Court." Boddie v. Schneider, 105 F.3d 857, 860-61 (2d Cir. 1997) (female
> guard sexually brushed against inmate on multiple occasions).

Copeland v. Nunan, No. 00-20063, 2001 WL 274738, at *3 (5th Cir. Feb. 21, 2001); accord Pryer

v. Walker, 385 Fed. App'x 417, 418 (5th Cir. 2010) ("Pryer's claim of sexual abuse was properly

dismissed because, even if it is assumed that a female prison guard rubbed his chest and made

comments about his hair and chest during the performance of his electrocardiogram, Pryer has not

alleged sufficiently serious assaultive behavior or resulting injury to show a constitutional

deprivation."); Allen v. Johnson, No. 02-31019, 2003 WL 21017401 (5th Cir. Apr. 15, 2003)

("Allen's claim of sexual abuse was properly dismissed because, even if it is assumed that

Theodore Johnson touched him in a sexual manner during routine pat-down searches, Allen has

not alleged sufficiently serious assaultive behavior or resulting injury to show a constitutional

deprivation."); Harold v. LeBlanc, Civ. Action No. 11-cv-1744, 2014 WL 2611725, at *3-4 (W.D.

La. June 11, 2014); Ware v. Tanner, Civ. Action No. 12-2250, 2013 WL 5589506, at *6-7 (E.D.

La. Oct. 10, 2013) (dismissing claim that jail doctor grabbed prisoner's penis and inappropriately

stroked it during an examination for genital pain, noting that prisoner had not alleged the type of

serious, sexual activity or more than a *de minimis* offensive touching of his penis which would

invoke constitutional protections).  Therefore, even if this incident had sexual overtones, it was a

*de minimis* use of force and a brief, isolated event which ended immediately upon plaintiff's statement that he was not suffering from a testicular hernia.

As to plaintiff's contention that a female nurse should not have been present during the examination, that claim likewise fails.  "[A]s a matter of common sense and common practice in this country, even outside the prison setting, medical practitioners of both genders treat patients without regard to gender, such that a male prisoner's receipt of treatment from a female nurse, nurse practitioner, or doctor would not implicate the prisoner's Fourteenth Amendment right to privacy."  Lyle v. Montgomery County Jail, No. 3:15-cv-01065, 2015 WL 6108069, at *3 (M.D. Tenn. Oct. 14, 2015).

### C.  Inadequate Medical Care

Plaintiff also claims that Dr. Thomas violated plaintiff's rights by denying him medications and treatments recommended by medical professionals from outside the jail.  In support of his claim, plaintiff submitted to the Court a copy of the response he received concerning his administrative grievance on this issue.  That response, which summarizes the medical care plaintiff has received at the jail, states:

> In response to ARP written on 11/22/16 regarding hernia management, Findings are as follows:
>
> • On 08/23/16 you verbalized constant pain to lower left side with palpable hernia.  You were transported to Riverside Medical Center ER and diagnosed with a Flank Hernia; Recurrent Inguinal Hernia.  ER physician recommended you be followed up by Dr. Thomas.  Review of ER Records of CAT Scan of pelvis and abdomen with contrast revealed cholelithiasis, fat containing left inguinal hernia; diverticulosis; post-surgical changes of left pelvic wall with large fat containing hernia unchanged from 03/18/2009.  Upon discharge from Riverside Medical Center ER your condition was noted as stable.  Medications recommended by ER physician – Tramadol and Neurontin not on the jail's formulary and not approved by the Nurse Practitioner.

- On 8/25/16, inmate was evaluated by Dr. Thomas in medical clinic. Diagnosed with reducible inguinal hernia and prescribed Motrin 800 mg three times daily as needed for pain. Dr. Thomas explained that retractable hernias do not meet surgical protocol through Eceptionist Medical Request Link.
- On 10/14/16, inmate reported complaint of increase size of left flank hernia, pain and burning on urination. Inmate was transported to Riverside Medical Center ER for evaluation. Urinalysis results were within normal range. The ER physician diagnosed inmate with Lumbar Strain. Inmate was referred to follow-up with physician at jail if symptoms worsen. Inmate was started on Naproxen 500 mg twice daily for 30 days; however, inmate refused Naproxen. He informed nurse that Ibuprofen works better; therefore, the Naproxen was discontinued.
- Inmate was scheduled to be seen in medical clinic on 10/18/16; however, inmate refused appointment stating that he was feeling a little better.
- On 11/03/16, inmate requested to see Nurse Practitioner for evaluation of complaint of athlete's foot and neck pain.
- On 11/04/16, inmate was evaluated in medical clinic by Nurse Practitioner with orders for Loratadine 10 mg daily; Flomax 0.4 mg daily; Voltran 75 mg twice daily; Lotrisone Cream to feet twice daily for 4 weeks; Welbutrin XL 150 mg daily; Abdominal Binder as needed; and referral to surgery clinic. Diagnosis: Ventral Hernia; Cervicalgia and tinea pedis.
- On 11/04/156 [sic], a request was submitted through Eceptionist for surgical consult regarding hernia with reply that a Reducible hernia is considered noncovered. Inmate was informed of response.
- On 11/15/16, inmate complained of infected cuticle around left thumb nail; increased abdominal discomfort with nausea. He verbalized concern that he was told he had gallstones that may be getting worse. Inmate was assessed in medical clinic by Nurse Practitioner and started on Bactrim DS twice daily for 10 days; Zofran 4 mg every 6 hours as need for nausea and vomiting; Welbutrin XL increased to 300 mg daily; Voltran 75 mg twice daily at 0800 hours and 1400 hours. He was referred for a surgery consult for cholelithiasis.
- Referral was initiated through Eceptionist with appointment scheduled at Lallie Kemp Surgery Clinic on 11/22/16 at 0800 hours. Inmate was assessed by surgeon with recommendation for a laparoscopic cholecystectomy. Inmate declined as he stated he preferred to have gall bladder and hernia surgery done at same time.

All orders must be approved by our physician or nurse practitioner for approval. Certain medications are not carried on our formulary at the discretion of our medical staff.

Medical referrals are entered into Eceptionist System with appointments scheduled by them and communicated to the nurse at the jail.

11

> Medicaid does not cover outside medical expense, other than medications.
> Inmate must provide proof of current Medicaid Prescription Card in order to receive
> Medicaid pricing from an outside pharmacy.
>> I hope this helps to better clarify the medical referral process.
>> If you have further concerns, please feel free to notify me.
>> I appreciate and welcome your feedback,

/s/
Jo Ann Saltaformaggio, RN, BC
Nurse Adnministrator
11/22/16[17]

All inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail.  However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  For the purposes of this decision, the Court will assume that plaintiff's medical needs are serious ones.  See Holloway v. Brisolara, Civ. Action No. 1:12cv60, 2013 WL 3884038, at *5 (S.D. Miss. July 26, 2013) ("It is assumed for the purposes of this motion that plaintiff's hernia was a serious medical need."); but see Guy v. Carter, Civ. Action No. 13-5730, 2014 WL 644321, at *9 (E.D. La. Feb. 19, 2014) ("[A] hernia does not automatically present a *serious* medical need for purposes of constitutional analysis.").

---

[17] Rec. Doc. 11, pp. 12-13.

Nevertheless, plaintiff's claim still fails because he cannot show that any defendant acted with "deliberate indifference."  As the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. … [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  …  And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Here, plaintiff obviously disagrees with Dr. Thomas's opinion as to appropriate course of treatment.  However, absent exceptional circumstances, such a disagreement concerning treatment does not constitute deliberate indifference.  Gobert, 463 F.3d at 346; see also Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015) (a prison doctor's "refusal to accommodate [a prisoner's] requests in the manner he desired" is not deliberate indifference).  Moreover, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."  Estelle v. Gamble, 429 U.S. 97, 107 (1976).  Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges.  Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions.  Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical

judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action.").  This is true even if the inmate believes that he may have been misdiagnosed, because "[i]t is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." Domino, 239 F.3d at 756.  There is no basis whatsoever to engage in such second-guessing in the instant case.

The foregoing conclusion is not changed by the fact that Dr. Thomas declined to follow the course of treatment allegedly recommended by the emergency room doctor.  See McBarron v. Federal Bureau of Prisons, 332 Fed. App'x 961, 964 (5th Cir. 2009) ("The record does not show that the recommended surgery [to repair an inguinal hernia] was immediately necessary, and Dr. Reyes' difference of opinion as to the course of treatment or need for surgery does not constitute deliberate indifference."); Taylor v. Louisiana, Civ. Action No. 12-44, 2012 WL 6606961, at *5 (E.D. La. July 10, 2012) ("[T]he fact that the jail doctor followed a different course of treatment than the hospital doctors is of no constitutional moment.  Differences of opinion among physicians as to the appropriate method of treatment do not constitute deliberate indifference."), adopted, 2012 WL 6600553 (E.D. La. Dec. 18, 2012); see also Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-1263, 2014 WL 7139636, at *4 (E.D. La. Dec. 15, 2014) ("The fact that [the plaintiff] may have been prescribed other types of pain medication by other doctors in the past is not determinative.  Prior opinions by such doctors were not binding on the medical staff at the Jefferson Parish Correctional Center, and differences of opinion among healthcare professionals as to the appropriate method of treatment do not constitute deliberate indifference.");

14

Griffin v. Foti, Civ. Action No. 03-1274, 2003 WL 22966347, at *3 (E.D. La. Dec. 16, 2003) ("The fact that prison doctors discontinued a course of treatment allegedly previously prescribed by plaintiff's private physicians is of no constitutional moment.  Differences of opinion among physicians as to the appropriate method of treatment do not constitute deliberate indifference. Moreover, even if the alternative medications prescribed by prison doctors were ineffective as plaintiff contends, he still has no constitutional claim." (citation and footnote omitted)); Campbell v. Martinez, No. Civ. A. 4:03-CV-299-Y, 2003 WL 22410576, at *3 (N.D. Tex. May 14, 2003) (differences of opinion among physicians as to the appropriate method of treatment do not amount to deliberate indifference), aff'd, 96 Fed. App'x 237 (5th Cir. 2004).

     Nor is that conclusion changed by the fact that plaintiff's condition has not been cured. Where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment.  Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

     Likewise, the conclusion is not changed by the fact that plaintiff's medical care "may not have been the best money could buy."  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978); cf. Dawson v. Corrections Corporation of America, No. 15-CV-643, 2015 WL 4092782, at *2 (W.D. La. July 6, 2015) ("Courts have often found that a failure to undertake surgical intervention for a reducible

hernia is not deliberate indifference to a serious medical need."). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether plaintiff's medical treatment was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need that was met with deliberate indifference. He did not. Accordingly, his claim that he was denied adequate medical care is legally frivolous and should therefore be dismissed.

Lastly, plaintiff also complains about the fact that medication is distributed by correctional officers rather than medical personnel. In support of his claim, plaintiff submitted to the Court a copy of the response he received concerning his administrative grievance on that issue. In that response, Nurse Saltaformaggio stated:

> In response to ARP received on 11/22/16 dated 11/09/16 regarding medication administerd [sic] by correctional officers.
> Correctional officers are trained on medication pass upon employment. Trained Correctional officers are allowed to pass medications as per WPSO policy.
> Please feel free to communicate specific concerns regarding your medications to me or the Warden so that issues can be addressed promptly.[18]

---

[18] Rec. Doc. 11, p. 9.

This claim concerning medication distribution does not implicate plaintiff's constitutional rights. The United States Constitution simply does not address such minutiae, and there is no indication that plaintiff has been given the wrong medication or that this medication distribution system amounts to a wanton disregard for any of plaintiff's serious medical needs.

### D. Unconstitutional Arrest

Plaintiff's claim that his arrest by Officer James Cockells was unconstitutional is barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (footnote omitted). Heck has been extended also to bar claims for declaratory and injunctive relief. See, e.g., Walton v. Parish of LaSalle, 258 Fed. App'x 633, 633-34 (5th Cir. 2007); Collins v. Ainsworth, 177 Fed. App'x 377, 379 (5th Cir. 2005); Shaw v. Harris, 116 Fed. App'x 499, 500 (5th Cir. 2004). Claims barred by Heck are legally frivolous. Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1996).

Although plaintiff now attempts to challenge the lawfulness of his arrest, he pleaded guilty in the state criminal proceedings. As a result, his claim against Cockells is barred by Heck until such time as plaintiff obtains a favorable disposition on the charges for which he was arrested. See

Walter v. Horseshoe Entertainment, 483 Fed. App'x 884, 887 (5th Cir. 2012) ("In order to support a claim for unlawful arrest, a plaintiff must show that he was arrested without probable cause. Here, the plaintiffs were arrested for crimes of which they were ultimately convicted.  Heck therefore bars recovery for the false arrest claim, because the conviction necessarily implies that there was probable cause for the arrest." (citation omitted)); see also Queen v. Purser, 109 Fed. App'x 659, 660 (5th Cir. 2004); Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995); Birgans v. Louisiana, Civ. Action No. 09-0926, 2010 WL 2428026, at *2-4 (W.D. La. Apr. 26, 2010), adopted, 2010 WL 2485958 (W.D. La. June 10, 2010), appeal dismissed, 411 Fed. App'x 717 (5th Cir. 2011); Jordan v. Strain, Civ. Action No. 09-3565, 2009 WL 2900013, at *2 n.4 (E.D. La. Aug. 28, 2009); Landor v. Hogue, Civ. Action No. 07-9171, 2008 WL 243950, at *3 (E.D. La. Jan. 25, 2008).   Therefore, plaintiff's claims against Cockells should be dismissed with prejudice to their being asserted again until the Heck conditions are met.[19]

### E.  Law Library

Plaintiff next complains that he was denied access to a law library during the course of his state criminal proceedings.  It is clear that inmates have a constitutional right of meaningful access to the courts which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Bounds v. Smith, 430 U.S. 817, 828 (1977).  The right extends to pretrial detainees during their criminal prosecution.  See United States v. Moya-Gomez, 860 F.2d 706, 743 (7th Cir. 1988); Wetzel v. Strain, Civ. Action No. 09-7048, 2010 WL 744993, at *3

---

[19] See DeLeon v. City of Corpus Christi, 488 F.3d 649, 657 (5th Cir. 2007) ("A preferred order of dismissal in Heck cases decrees, 'Plaintiffs [sic] claims are dismissed with prejudice to their being asserted again until the Heck conditions are met.'").

(E.D. La. Feb. 26, 2010); <u>Kirkpatrick v. Daugherty</u>, Civil Action No. 6:05cv461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006). However, when a pretrial detainee has counsel appointed to represent him with respect to his pending criminal charge, that appointment of counsel satisfies the detainee's right of access to courts. In those circumstances, he is not *additionally* entitled to independent access to a law library and legal support. <u>See, e.g.</u>, <u>Dickinson v. TX, Fort Bend County</u>, 325 Fed. App'x 389, 390 (5th Cir. 2009) ("Because Dickinson had court-appointed counsel to represent him, he did not have a constitutional right of access to a law library to prepare his criminal defense."); <u>Ashcraft v. Cameron County</u>, No. 97-41219, 1998 WL 611201, at *3 (5th Cir. Aug. 17, 1998) ("A criminal defendant cannot complain that he was denied access to the courts while represented by counsel."); <u>Ford v. Foti</u>, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him."); <u>Childs v. Scott</u>, No. 94-60723, 1995 WL 153057 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); <u>Webb v. Havins</u>, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); <u>Crockett v. Carpenter</u>, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994).

As noted, plaintiff testified at the <u>Spears</u> hearing that he was appointed a public defender to represent him in the state criminal proceedings. As a result, there was no violation of his right of access to the courts. That is true even if he wanted to perform his own legal research to assist his counsel, because the right at issue simply does not extend that far. <u>See, e.g.</u>, <u>Caraballo v. Federal Bureau of Prisons</u>, 124 Fed. App'x 284, 285 (5th Cir. 2005) ("Caraballo also asserts that he was denied meaningful access to the courts because he was unable to assist his attorney during

his direct appeal by conducting legal research.  Because Caraballo had court-appointed counsel on appeal, he had no constitutional right of access to a law library in preparing his defense, and Caraballo failed to state a claim for which relief may be granted."); Boyd v. Nowack, Civ. Action No. 09-7639, 2010 WL 892995, at *3 (E.D. La. Mar. 11, 2010) ("Because plaintiff is currently represented, he has no valid access-to-courts claim with respect to his criminal proceeding, even if he would like to 'assist' his attorney."); cf. Prather v. Anderson, No. Civ. A. H-05-2964, 2005 WL 2277528, at *2 (S.D. Tex. Aug. 31, 2005) ("It is well established ... that a criminal defendant has no constitutional right to hybrid representation ...."). That is true even if plaintiff had wanted to fire his counsel and proceed *pro se*. The initial appointment of counsel sufficed to protect his right of access to the courts, and any subsequent voluntary choice to waive appointed counsel would not change that fact. Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) ("[H]aving rejected the assistance of court appointed counsel, [an inmate has] no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial."); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *5 (E.D. La. Mar. 19, 2015); Wetzel v. Strain, Civ. Action No. 09-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010).

## F.  Failure to Answer Grievances

In one of the amendments to his complaint, plaintiff added a claim against Warden Miller for his alleged failure to respond to plaintiff's grievances. However, even if that occurred, it does not rise to the level of a constitutional violation. Simply put, inmates have no constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. Bonneville v. Basse, 536 Fed. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-

74 (5th Cir. 2005); <u>Davis v. St. Charles Parish Correctional Center</u>, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); <u>Carter v. Strain</u>, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); <u>Tyson v. Tanner</u>, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); <u>Mahogany v. Miller</u>, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), <u>appeal dismissed</u>, 252 Fed. App'x 593 (5th Cir. 2007).

### G.  Conditions of Confinement

Plaintiff has also complained that he sent the Washington Parish Government a number of grievances which were simply returned to him stamped "Return to Sender."[20]  It is unclear whether he is seeking to assert a federal claim concerning (1) the fact that the parish government refused to consider his complaints, (2) the underlying conditions described in the grievances, or (3) both. Out of an abundance of caution, the undersigned will assume that he is now complaining about both the rejection of his grievances and the underlying conditions described in those rejected grievances.  However, even when his claims are construed in that broad manner, he is not entitled to relief.

To the extent that plaintiff is claiming that parish officials have violated his constitutional rights by failing to respond to his complaints, that claim is legally frivolous.  As noted above with respect to the prior claim, an inmate has no federal constitutional right to have his grievances investigated and resolved to his satisfaction.

As to the substance of the underlying grievances, the Court notes that they covered numerous issues.  Plaintiff alleged that the jail (1) is overcrowded, with some inmates having to

---

[20] Rec. Doc. 10, p. 8.

sleep on the floor,[21] (2) has water on the floor which "creates an unsafe environment,"[22] (3) is damp and moldy when the air conditioning is off, but is too cold when it is on,[23] (4) has dangerous wiring and exposes inmates to hazards in the event of a fire,[24] (5) serves unsatisfactory food with undue delays between meal times,[25] and (6) does not afford inmates adequate access to the outdoors for recreation.[26]   Although the Court notes that it is not unsympathetic to plaintiff's various complaints concerning the conditions of his confinement, the issue is not whether the conditions of plaintiff's confinement are unpleasant or uncomfortable – rather, it is only whether the conditions are *unconstitutional*.   While the conditions alleged in this case may be lamentable, they are not unconstitutional for the following reasons.[27]

---

[21] Id. at p. 12.

[22] Id. at pp. 12-13.

[23] Id. at pp. 13-14.

[24] Id. at p. 15.

[25] Id. at pp. 17-18.

[26] Id. at p. 19.

[27] As an aside, the undersigned notes that it appears that plaintiff has identified the Washington Parish Government as the defendant with respect to these claims challenging the conditions of his confinement.  However, it is not clear that the parish government would in fact be the appropriate defendant.  As United States District Judge Lance Africk recently explained:

> This Court has previously considered the division of authority between the parish governing authority and the sheriff as it relates to the parish jail.  See, e.g., Jones v. Gusman, No. 12-859, 2016 WL 115775 (E.D. La. Jan. 11, 2016) (Africk, J.).  Louisiana law obligates the parish governing authority to provide "a good and sufficient jail."  La. R.S. § 33:4715.  [The] Parish also bears the responsibility of financing and physically maintaining the parish jail.  See La. R.S. § 15:702.  Significantly, however, it is the sheriff who has the duty of operating the jail facility.  See La. Rev. Stat. § 15:704.  [The] Parish does not "have authority over the operations of the jail or the management of the sheriff's employees working therein."  Salvagio v. Doe, No. 13-5182, 2013 WL 6623921, at *3 (E.D. La. Dec. 16, 2013) (Vance, J.); see also Fairley v. Stalder, 294 Fed.Appx. 805, 812 (5th Cir. 2008) ("[W]e agree that day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority.").
>
> Because the parish lacks authority over the operations of the jail and the conduct of jail personnel, the sheriff – not the parish – is typically held responsible when those operations or that conduct fall below the standards imposed by federal law.  See, e.g., Jones v. St. Tammany Par. Jail, 4 F. Supp. 2d 606, 613 (E.D. La. 1998).  However, the allocation of management authority to the sheriff does not entirely absolve the parish of responsibility for an inmate's conditions of confinement.  After all, the parish does have the responsibility of financing and physically maintaining the jail.  It follows that, at the very least, the parish may be held liable when the physical

As to plaintiff's claim that the jail is overcrowded, it is clear that conclusory allegations of overcrowding are insufficient to establish a constitutional violation.  See, e.g., Skinner v. D'Cunha, 544 Fed. App'x 345, 346 (5th Cir. 2013); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015); Robertson v. LeBlanc, Civ. Action No. 13-171, 2014 WL 688979, at *5 (M.D. La. Feb. 20, 2014); Davis v. St. Charles Corr. Center, Civ. Action No. 10-98, 2010 WL 890980, at *6 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *4 (E.D. La. Oct. 1, 2009).  Moreover, in any event, the mere fact that inmates are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation.  See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981); Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional."); Price v. New Orleans Parish Criminal Sheriff, Civ. Action No. 09-3573, 2009 WL 2139702, at *3 (E.D. La. July

---

jail facility itself does not comply with federal standards.  It is also conceivable that to the extent the jail's deficiencies are attributable solely to a lack of adequate funding, the parish's obligation to fund the jail could be implicated and the parish might be held responsible.

Courts considering allegations of jail deficiencies brought against a parish have typically asked first whether the allegations implicate the parish's responsibility to finance and physically maintain the jail.  If those responsibilities are not implicated, the claim against the parish cannot go forward.  See Salvagio, 2013 WL 6623921, at *3 ("Because plaintiff's allegations focus on the legality of his detention and do not pertain to the adequacy of the parish's funding of the jail facilities, the parish cannot be held liable for any misconduct on the part of the sheriff's employees with respect to plaintiff's detention.").  If those responsibilities are implicated, then the parish is a proper defendant to the lawsuit.  See Thompson v. Ackal, No. 15-02288, 2016 WL 1371192, at *5 (W.D. La. Feb. 2, 2016), report and recommendation adopted, No. CV 15-02288, 2016 WL 1370597 (W.D. La. Apr. 5, 2016); Roper v. Marino, No. 92-3988, 1995 WL 222185, at *1 (E.D. La. Apr. 13, 1995) (Vance, J.) (denying St. Charles Parish summary judgment where the plaintiff alleged "that the physical facility of the jail was inadequate" because issues of fact existed "concerning the adequacy of the physical facility" and whether parish funding was sufficient).

Arce v. Louisiana, Civ. Action No. 16-14003, 2016 WL 7407223, at *4 (E.D. La. Dec. 22, 2016).

That said, it is unnecessary for the Court to determine which, if any, of the conditions of confinement claims in the instant case are properly asserted against the parish government.  Even if the Court assumes for the purposes of this decision that the parish government may be an appropriate defendant, the underlying claims are nevertheless meritless for the reasons explained herein.

23

13, 2009); Thompson v. Stalder, Civ. Action No. 06-659, 2008 WL 874138, at *7 (M.D. La. April 1, 2008) ("[T]he law is clear that the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension. It has been held that such a claim, without more, does not violate an inmate's constitutional rights."); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007).  This is not changed by plaintiff's allegation that the overcrowding resulted in some inmates sleeping on the floor. Requiring inmates to place their mattresses on the floor when no bunks are available is not unconstitutional "because the Constitution does not require elevated beds."  Pitt v. Weaver, Civ. Action No. 15-360, 2015 WL 2452348, at *3 (E.D. La. May 20, 2015); see also Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); accord Sanders v. Kingston, 53 Fed. App'x 781, 783 (7th Cir. 2002); Finfrock v. Jordan, No. 95-3395, 1996 WL 726426, at *1 (7th Cir. Dec. 6, 1996); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); McCarty v. McGee, Civ. Action No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008).  Courts have also found that a short-term requirement that an inmate sleep on the floor even *without* a mattress fails to rise to the level of a constitutional violation.  Desroche v. Strain, Civ. Action No. 07-1372, 507 F. Supp. 2d 571, 579-80 (E.D. La. 2007) (ten days in holding cell without a mattress), appeal dismissed, 291 Fed. App'x 569 (5th Cir. 2008); accord McCallister v. Strain, Civ. Action No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009).

Plaintiff also complains about the presence of water on the floor, which he alleges is a safety hazard.  In one complaint, he refers to the presence of standing water,[28] while he indicates

---

[28] Rec. Doc. 10, p. 12.

in another that he is referring to condensation.[29]   In either event, the undersigned rejects the contention that the condition described is so egregious as to pose a danger sufficiently serious to violate constitutional standards.  In asserting such a claim, a plaintiff may not merely to point to the fact that slippery conditions exist; rather, his claim is actionable only if the defendants were deliberately indifferent to a danger that posed a substantial risk of serious harm.  Where, as here, the inmate is aware of a condition which at times causes water to collect on the floor, and can therefore avoid the danger simply by exercising reasonable caution, the existence of the water does not pose a substantial risk of serious harm.  See, e.g., Verrett v. Randolph, Civ. Action No. 08-1200, 2009 WL 103715, at *6 (E.D. La. Oct. 22, 2008) (Shushan, M.J.) (adopted by Feldman, J., on Jan. 13, 2009).  Even where a slippery floor has in fact resulted in an inmate's fall, courts have found that the inmate's claim is not actionable under federal law.  See, e.g., Lathers v. Nelson Coleman Correctional Center, Civ. Action No. 07-2891, 2007 WL 1702780, at *2-3 (E.D. La. June 11, 2007) (inmate slipped in puddle of water; court held that such "slip and fall" negligence claims are not cognizable under § 1983); see also Hawkins v. Gusman, Civ. Action No. 13-256, 2014 WL 1329823, at *3 (E.D. La. Mar. 28, 2014) (inmate slipped on floor wet from stripping solution; court held that such claims are grounded in state tort law, not federal constitutional law).

Plaintiff next complains that the jail is damp and moldy when the air conditioning is off, but it is too cold when it is on.  This claim likewise fails for the following reasons.

The mere fact that the prison may be humid when the air conditioning is turned off is not a constitutional violation.  See, e.g., Russell v. Pittman, Civ. Action No. 14-2204, 2015 WL 4478054, at *3 (E.D. La. July 22, 2015) ("Plaintiff's allegation of 'dank air' at the Orleans Parish

---

[29] Id. at p. 13.

Prison also fails to state a constitutional violation."); McKinney v. Gusman, Civ. Action No. 14-2988, 2015 WL 2341719, at *3 (E.D. La. May 13, 2015); White v. Gusman, Civ. Action No. 14-2131, 2014 WL 6065617 (E.D. La. Nov. 12, 2014); Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL 666851, at *7 (E.D. La. Feb. 14, 2011).  Further, the presence of mold in a jail does not render an inmate's confinement unconstitutional.  See, e.g., Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a de minimis level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Plaintiff's contention that the jail is too cold when the air conditioning is on is similarly meritless.  It cannot be doubted that exposure to "extreme cold" is actionable in some circumstances.  See, e.g., Palmer v. Johnson, 193 F.3d 346, 353 (5th Cir. 1999). Here, however, there is no indication that the air conditioning subjected plaintiff to "extreme cold" or that he suffered from any type disability which made him particularly vulnerable to harm as a result of

uncomfortably cool conditions. Accordingly, his allegations fall far short of what is required to state a cognizable § 1983 claim. See Smith v. Gusman, Civ. Action No. 14-1153, 2015 WL 2066517, at *3 (E.D. La. May 4, 2015).

Plaintiff next complains that the jail has dangerous wiring and exposes inmates to hazards if there is a fire. However, even if those allegations are true, it does not necessarily follow that his constitutional rights have been violated. While fire and electrical codes "can be helpful in determining whether a lack of fire safety" rise to the level of a constitutional violation, such codes "are not determinative." Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 322 (5th Cir. 2008). Moreover, where, as here, an inmate does not "allege that anyone had been injured by any type of fire or that [the jail] was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim." Id.; accord Hunnewell v. Warden, Main State Prison, No. 93-1917, 1994 WL 52643, at *4 (1st Cir. Feb. 23, 1994) ("[N]ot every deviation from ideally safe conditions constitutes a violation of the constitution. Moreover, even liberally construed, plaintiff's complaint that his cell is unsafe due to fire hazards is conclusory and fails to state a claim under § 1983." (citation omitted)); Sampson v. King, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. Nor is it bound by the standards set by the safety codes of private organizations. Standards suggested by experts are merely advisory. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure." (citations omitted)); Patin v. LeBlanc, Civ. Action No. 11-3071, 2012 WL 3109402, at *17 (E.D. La. May 18, 2012), adopted, 2012 WL 3109398 (E.D. La. July 31, 2012); Davis v. St. Charles Parish Corr. Center, Civ. Action No. 10-98, 2010 WL

27

890980, at *7 (E.D. La. Mar. 8, 2010); <u>Jernigan v. Dretke</u>, Civ. Action No. H-04-4672, 2005 WL 1185627, at *3 (S.D. Tex. Apr. 29, 2005) ("At the most, Jernigan has alleged a condition that may violate local fire codes.  The prison does not violate the Constitution if it fails to comply with all health and safety standards.  Although the situation Jernigan describes is far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could be found to be deliberately indifferent if they allowed it to continue.  No actual harm has been alleged, and Jernigan's speculative worries do not establish a claim." (citations omitted)).  Accordingly, this claim must also be dismissed.

As to plaintiff's claim that the jail serves unsatisfactory food with undue delays between meal times, that, too, is meritless.  "[T]he constitutionality of prison food is not judged by its gastronomic appeal."  <u>Billizone v. Jefferson Parish Correctional Center</u>, Civ. Action No. 14-2594, 2015 WL 966149, at *9 (E.D. La. Mar. 4, 2015); <u>accord</u> <u>Cummings v. Gusman</u>, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n.1 (E.D. La. June 9, 2009).  Rather, the Constitution requires only that jail meals provide "reasonably adequate food" with "sufficient nutritional value to preserve health."  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."); <u>Smith v. Sullivan</u>, 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required.").  Moreover, the United States Fifth Circuit Court of Appeals has noted that "[e]ven on a regular, permanent basis, two meals a day may be adequate." <u>Berry v. Brady</u>, 192 F.3d 504, 507 (5th Cir. 1999).  Nothing in plaintiff's complaint suggests that the meals in the instant case fail to meet those minimal standards.

Lastly, plaintiff complains that inmates are not afforded adequate access to the outdoors for recreation. However, even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional. <u>See, e.g.</u>, <u>Chavis v. Fairman</u>, No. 92-C-7490, 1994 WL 55719, at *5 (N.D. Ill. Feb. 22, 1994) ("Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity."), <u>aff'd</u>, 51 F.3d 275 (7th Cir. 1995); <u>Rue v. Gusman</u>, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D. La. May 11, 2010); <u>Broussard v. Phelps</u>, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D. La. Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise). Plaintiff's allegations regarding this claim are therefore insufficient to support a cognizable claim.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's federal habeas corpus claims be **DISMISSED WITHOUT PREJUDICE** due to his failure to exhaust his remedies in the state courts.

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights claims against Nurse Saltaformaggio be **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 41(a)(1)(A)(i).

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights claims against Officer James Cockells be **DISMISSED WITH PREJUDICE** to their being asserted again until the <u>Heck</u> conditions are met.

It is **FURTHER RECOMMENDED** that all of plaintiff's remaining federal civil rights claims against all remaining defendants be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this twenty-fifth day of January, 2017.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[30] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.